IN THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) CASE NO.:  4:22cr28 |
| | ) |
| ELLIOTT DALE VELEZ, | ) |
| Defendant. | ) |
| | ) |

## DEFENSE POSITION WITH RESPECT TO SENTENCING FACTORS

COMES NOW the defendant, Elliott Dale Velez, by undersigned counsel, Greg D. McCormack and in accordance with § 6A1.2 of the Sentencing Guidelines and Policy Statements and this Court's policy regarding guidelines sentencing, the Defense hereby represents that it has received and reviewed the Presentence Investigation Report and Addendum thereto prepared by the United States Probation Officer.   There are no unresolved Defense objections to the Amended Presentence Investigation Report, ECF Document # 46.

## SENTENCE RECOMMENDATION BY DEFENSE

Counsel for the defendant, Elliott Dale Velez recommends imposition of the following variant sentence: imprisonment for 15 years (180 months), followed by supervised release for life, is "sufficient, but not greater than necessary" to satisfy the statutory factors.   It is noted that pursuant to the terms of the Plea Agreement and in accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States has agreed to recommend imposition of a sentence no more than 35 years (420 months), as being "sufficient, but not greater than necessary" to satisfy the statutory factors.

## FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE

The sentencing factors which the Court must consider pursuant to 18 U.S.C. 3553(a) are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) need for the sentence imposed to (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kind of sentences available; (4) the sentencing range established for the type of offense committed by the defendant as set forth in the United Stated Sentencing Guidelines; (5) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

## APPLICATION OF THE 18 U.S.C. §3553 SENTENCING FACTORS SUPPORT A VARIANT SENTENCE

Pursuant to the provisions of §5K2.0(b) of the Federal Sentencing Guidelines Manual, and the factors to be considered in imposing a sentence as set forth in 18 U.S.C. §3553 (b) (2) (A)(ii), the defendant, Elliott Dale Velez, by counsel, respectfully submits his request that the Honorable Court grant a significant downward variance from the applicable sentencing guidelines to impose a sentence which is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. §3553(a)(l ) and (2).  Counsel for Elliott Dale Velez submits that the appropriate sentence in this matter is a period of imprisonment for 15 years (180 months), followed by supervised release for life.

2

While the Court must consider the Guidelines calculation as part of the sentencing process, the Guidelines merely "serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough v. United States,* 552 U S. 85, 90 (2007). Rather than simply impose a sentence within the Guidelines range, the Court must consider the whole range of factors listed in 18 U.S.C. §3553 and determine the sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *Id.* at 101 (quoting 18 U.S.C. §3553). Indeed, the Court may not even "presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Gall v. United States,* 552 U.S. 38, 50 (2007). The sentencing court has wide latitude to impose a sentence below the Guidelines range, "perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita v. United States,* 551 U.S. 338, 351 (2007). Here, the 18 U.S.C. §3553(a) factors overwhelmingly support a sentence far below the suggested Guidelines Range. Pursuant to the terms of the Plea Agreement and in accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States has agreed to recommend imposition of a sentence no more than 35 years (420 months), as being "sufficient, but not greater than necessary" to satisfy the statutory factors.   It is respectfully the position of the Defense that upon consideration of the mitigating factors related to the history and characteristic of Elliott Velez, a sentence of imprisonment for 15 years (180 months), followed by supervised release for life, is "sufficient, but not greater than necessary" to satisfy the statutory factors.

## DEFENDANT'S HISTORY AND CHARACTERISTICS:

In determining the particular sentence to be imposed, 18 U.S.C. §3553 (a)(l) requires

consideration of the "history and characteristics of the defendant."   As reflected in the Presentence

Investigation Report, Elliott Dale Velez has no prior criminal record.[1]  Elliott was born on October

25, 1984 in Ipswich, England as Elliott Dale Lander.   His mother Maxine Velez and father Gary

Lander were not married and Gary Lander has been uninvolved in Elliott's life since he was 4 years

old.   His mother, Maxine Velez, age 58, married Elliott's stepfather, Robert Velez, age 58 on July

7, 1989.   Elliott considered Robert as his father and in June 2005 Elliott's last name was legally

changed to Velez.  Currently Maxine and Robert Velez reside in England.  Elliott has two siblings, a

full bother Liam Velez, age 40 who resides in Nevada and a half brother Robert Velez, Jr., age 32,

who resides in Arizona.  Robert Velez was on active duty with the United States Air Force, resulting

in Elliott's family moving frequently.  As a child, Elliott lived in England from 1984 to 1987, in

California from 1987 to 1991, in England 1991 to 1993, in Arizona from 1994 to 1999 and then in

Italy from 1999 to 2003.

Elliott Velez is a combat veteran who has been on active duty with the United States Air

Force since 2003.  Attaining the rank of Senior Master Sergeant (E-8) in 2018, as he approached

20 years of active duty he and his wife made plans for him to retire from the Air Force after

which he was intending to transition into a career in real estate.   In February of 2022, he

submitted his request to retire on February 1, 2023 and was subsequently informed by email that

his retirement request was approved.   As a collateral consequence of the subject convictions,

Senior Master Sergeant Velez is currently being processed for administratively separation from

the Air Force for misconduct, most certainly with a discharge characterized as Other than

---

[1]  Presentence Investigation Report § 91-93

Honorable (OTH) conditions, resulting in the loss of his retirement benefits.  Elliott and his wife intended to start a family after his retirement.  As noted in the Retirement Chart  (Exhibit F) provided to the Court, assuming an expected life to the age of 85, the estimated loss of his total retirement package for Elliott and his family is $ 3,051,935.00, with  a present value of $ 1,187,410; [2] in addition to the loss of health care benefits for himself, wife and children.

The United States Supreme Court has observed that the nation has "a long tradition of according leniency to veterans in recognition of their service, especially for those who fought on the front lines."[3] In a recent article, United States Circuit Judge Michael Daly Hawkins noted, "There is widespread public acceptance of the notion that military veterans should be treated differently in many respects from their civilian counterparts. This acceptance may be attributable to a general respect for the sacrifice of members of an all-volunteer force and the knowledge that today's veteran may have been subjected, even repeatedly subjected, to life threatening events the general public may never know."[4]

The United States Sentencing Guidelines specifically authorize judges to consider an offender's prior military service as a mitigating factor when determining whether to depart from the federal sentencing guidelines.  In its Federal Sentencing Guidelines Manual, 2021 Edition, the Commission states "Military service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines."[5]

---

[2]  See Exhibit F: Estimated loss of Total Retirement Package, at age 85 life expectancy in the amount of $3,051,935.00
[3] Porter v McCollum, 558 U.S. 30, 43-44 (2009) (per curiam).
[4] Michael Daly Hawkins, Coming Home: Accommodating the Special Needs of Military Veterans to the Criminal Justice System, 7 OHIO STATE J. CRIM L. 563, 569 (2010).
[5] Federal Sentencing Guidelines §5H1.11

Senior Master Sergeant (E-8) Velez served two combat tours to Iraq, in 2007 and again in 2008. As referenced in the Presentence Investigation Report[6], during his first combat tour in Iraq in 2007, he was assigned with Force Protection to coordinate movement of construction areas near and on the flight line for Air Base operations. In that assignment he experienced multiple traumatic events, including his location being repeatedly subjected to incoming mortar fire. Most significantly, while on perimeter defense duty, he was faced with the scenario of a child approaching the base with what appeared to be a weapon – he was instructed by his supervision to eliminate the threat. Thankfully when he was just seconds away from shooting the child as directed, the child turned away. It was determined that he was seconds away from killing a child who had a toy, not a weapon. In addition, while in Iraq he was continuously exposed to the horrors of war to include observing multiple civilians and fellow military members who had been killed or seriously wounded. These are memories that to this day frequently haunt him. In addition, during that combat tour he was cited for his actions of locating 3 unexploded ordinances in a single day. While in his second combat tour to Iraq in 2008, he was assigned as the War Reserve Material NCOIC, again being subjected to routine incoming mortars as well as exposure to dead and seriously wounded military personnel and civilians.

In the case of *Porter v McCollum*, 558 U.S. 30 (2009), the Supreme Court held that not only was it relevant that the veteran-defendant had "extensive combat experience" and had "served honorably under extreme hardship and gruesome conditions," but also "that the jury might find mitigating the intense stress and mental and emotional toll that combat took" on the defendant.[7]

---

[6] Presentence Investigation Report §100
[7] Porter v McCollum, 558 U.S. 30, 43-44 (2009) (per curiam).

Although Elliott Velez has not been diagnosed with PTSD as a result of his combat service, he like many other combat veterans did not seek out mental health assistance out of fear that it would lead to the premature end of his military career.  As noted in the October 2021 report of the United States Sentencing Commission addressing Federal Offenders Who Served in the Armed Forces, more than half (54.8%) of the offenders whose service was cited by the court had served in a combat zone, compared to 22.6 percent for all veteran offenders.   Of the 381 veterans sentenced in 2019 who had served in a combat zone, 168 had served in Iraq.  In addition to physical injury, many veterans report suffering from posttraumatic stress.  Of the 1,869 veteran offenders sentenced in fiscal year 2019, 281 reported suffering from posttraumatic stress related to military service.    Two-thirds (66.9%) of the offenders whose military service was cited by the court indicated that they had some history of mental health problems, compared to 51.1 percent for veteran offenders generally.[8]  As noted in the Presentence Investigation Report, Senior Master Sergeant Velez believes he suffers from Post Traumatic Stress Disorder (PTSD) as a result of his combat service in Iraq.[9]  Earlier in his Air Force career, he sought out mental health treatment due to his relationship issues with the mother of his children.  Despite not specifically seeking mental health treatment to address his combat related issues, in January 2022 he was diagnosed with depression and anxiety, for which he is currently prescribed Trazadone and Prozac.[10]  He also acknowledges that he has an addictive personality not only to alcohol, but also to pornography and gambling. [11]  He was unable to initiate mental health treatment due to his arrest and incarceration

---

[8] Federal Offenders Who Served in the Armed Forces, United States Sentencing Commission, October 2021
[9] Presentence Investigation Report § 110
[10] Presentence Investigation Report § 109
[11] Presentence Investigation Report § 110

on the subject charges.   He suffers from physical ailments related to irritable bowel syndrome as well as degenerative disc disease.

Among the reasons often cited for considering military service at sentencing are that veteran offenders often have high incidences of alcohol abuse, substance abuse, and mental health problems related to their military service.  As referenced in the Presentence Investigation Report, Elliott reported that while in the Air force he occasionally abused alcohol and experienced "black outs."  Prior to his arrest on the subject offenses, he was consuming alcohol approximately four times a week.[12]  Alcohol played a significant role in the subject offenses, with him frequently drinking heavily while engaged in the on-line activity.  Although he completed an alcohol awareness program in the Air Force, he has not undergone a formal substance abuse evaluation or participated in an alcohol rehabilitation program.  Of the veteran offenders referenced in the October 2021 Report of the United States Sentencing Commission, 13.1 percent indicated that they had abused alcohol at some time prior to their federal offense.  Half (51.1%) indicated that they had some history of mental health problems, a rate much higher than the rate for posttraumatic stress alone.

The United States Sentencing Commission evaluated the comparison of the education level of veteran offenders and non-veteran offenders. Veteran offenders tend to be more educated than citizen offenders overall. Among veteran offenders, just 3.0 percent had less than a high school education and 38.9 percent had graduated from high school. Another 42.4 percent of veteran offenders had some college education while 15.7 percent were college graduates.  Among citizen offenders generally, 30.2 percent had less than a high school education, while 40.7 percent had graduated high school.  Although 22.1 percent of citizen offenders had some college education,

---

[12] Presentence Investigation Report § 111

only 7.0 percent had graduated from college.  As referenced in the Presentence Investigation Report, since graduating high school in 2002, Elliott has sought out and secured significant additional education.   He received two Associate Degrees in Applied Science in June 2009 and August 2013.  In June 2016, he received a Professional Manager Certification and in June 2015, Elliott received his Bachelor of Science Degree in Management and was awarded his Master of Science degree in Leadership. [13]

Elliott D. Velez was promoted to the rank of Senior Master Sergeant in 2018.  Throughout his nearly twenty-year career in the United States Air Force, Senior Master Sergeant Elliott Velez provided outstanding service and consistently exhibited strong leadership attributes and a can-do attitude. While in the U.S. Air Force, Senior Master Sergeant Velez earned the following awards and decorations:

1.  Meritorious Service Medal w/2 Oak Leaf Clusters
2.  Air Force Commendation Medal w/Oak Leaf Cluster
3.  Air Force Achievement Medal w/Oak Leaf Cluster
4.  Air Force Meritorious Unit Award w/Oak Leaf Cluster
5.  Air Force Outstanding Unit Award w/Silver & Bronze Oak Leaf Clusters
6.  Air Force Organizational Excellence Award
7.  Air Force Good Conduct Medal w/4 Oak Leaf Clusters
8.  National Defense Service Medal
9.  Iraq Campaign Medal w/Bronze Star
10. Global War on Terrorism Expeditionary Medal
11. Global War on Terrorism Service Medal
12. Korea Defense Service Medal
13. Air Force Overseas Short Tour Ribbon
14. Air Force Expeditionary Service Ribbon w/Gold Border
15. Air Force Longevity Service Award w/3 Oak Leaf Clusters
16. Air Force Special Duty Ribbon
17. Air Force NCO PME Graduate Ribbon w/2 Oak Leaf Clusters
18. Small Arms Expert Rifle Ribbon
19. Air Force Training Ribbon

---

[13] Presentence Investigation Report § 114-118.

Senior Master Sergeant Elliott Velez was hand-picked by the Command Chief Senior Master Sergeant to serve as the Career Assistance Advisor at JBSA - Randolph AFB, Texas. Overseeing the Professional Development Program for the base, he served as the principal advisor to all unit Commanders and Supervisors on retention issues. In addition to promoting personal and professional growth for Airmen base-wide, he guided them through making informed decisions for their military career, through career path counseling, reenlistments, retraining and specialty job opportunities.

As noted previously, Senior Master Sergeant Velez's career included two combat deployments to Kirkuk Air Base, Iraq in support of Operation IRAQI FREEDOM. In 2007 he served as a Force Protection Escort to coordinate movement of construction areas near and on the flight line for Air Base operations. He specifically distinguished himself by locating three unexploded ordinances in a single day. His flawless actions prevented possible injuries to personnel, damage to equipment and mission degradation. In 2008 he served as NCOIC of War Reserve Material valued over four million dollars enabling mission supporting units for the Air Expeditionary Wing.

Over the last 10 years, Senior Master Sergeant Velez led implementation of safety and risk management policies pertinent to the United States Air Force by providing safety consultation to Commanders and Senior Air Force Leaders to prevent mishaps, preserve resources and enable mission capability through risk mitigation. This includes assignments as the Non-Commissioned Officer In-Charge (NCOIC) and Superintendent of Safety at Air Force Base's in Arizona, the Republic of Korea, Texas and Nevada.

While serving at Nellis Air Force Base, Nevada Senior Master Sargeant Velez served as the Superintendent of Safety, United States Air Force Warfare Center.  In that position he was

responsible for implementing pertinent Department of Defense and Department of the Air Force Safety policies for over 13,000 Airmen across 21 locations in the continental United States. In addition, he assisted subordinate organizations and the Warfare Center to conduct live and virtual operational test and evaluation, tactics development and advanced training to optimize capabilities and prepare Airmen for joint and all domain combat operations. His efforts earned him the Air Force Safety Special Achievement Award in 2019 and directly contributed to the Air Combat Command's Air Force Occupational Safety Award win in 2020.

His last duty station was Joint Base Langley- Eustis, Virginia. Senior Master Seargent Velez was an Enlisted Professional Developmental Manager, assigned to Air Combat Command Headquarters.  He coordinated with Air Staff and Major Command Functional Managers to create training and support professional development plans based on Air Force needs for over sixty-two thousand enlisted personnel serving at over 215 locations around the globe.

A review of the citations of some of the Awards and Decorations which he earned during his nearly 20-year career reveal the magnitude and scope of Senior Master Sargeant Velez's dedication and commitment to serving his country as a member of the United Staes Air Force.  In April 2008 he was awarded the Air Force Achievement Medal for his outstanding achievements for the period of 16 January 2008 to 16 May 2008.  In August 2010 he was again awarded the Air Force Achievement Medal (First Oak Leaf Cluster) for his outstanding achievement in April 2010.  That award was the result of the utilization of his Air Force life-saving skills to provide assistance and first-aid to a 16-year-old autistic child on a bicycle who he witnessed being seriously injured when he was struck by a vehicle.  For that, he was also lauded by the Air Force Thunderbirds as an "unsung hero" for his life saving aid, as noted in his evaluation in February 2012.  In January 2011 he was awarded the Air Force Commendation Medal for his meritorious service for the period of 14 May 2003 to 10 March 2011.  In November 2013 he was again

11

awarded the Air Force Commendation Medal (First Oak Leaf Cluster) for his meritorious service for the period of 11 March 2011 to 30 October 2013.  In May of 2021 he was awarded the Meritorious Service Medal for his meritorious service for the period of 28 September 2018 to 14 June 2021.

In addition to the numerous Awards and Decorations earned by Senior Master Sargent Velez through his career, his other significant achievements include the following:

2003  Airman of the Month, November, 56th Fighter Wing TOP 3, Luke AFB, AZ
2004  Airman of the Month, August, 56th Logistics and Readiness Squadron, Luke AFB, AZ
2005  Airman of the Quarter, 2nd Quarter, 56th Logistics and Readiness Squadron, Luke AFB, AZ
2007  Unsung Hero Award, Kirkuk Regional Air Base TOP 3, Kirkuk Air Base, Iraq
2012  NCO of the Quarter, 3rd Quarter, Wing Staff Agencies, 56th Fighter Wing, Luke AFB, AZ
2013  Safety Professional of the Year, Annual, Air Education and Training Command
2014  Senior NCO of the Quarter, 1st Quarter, 51st Fighter Wing, Osan AB, Republic of Korea
2015  Senior NCO of the Quarter, 3rd Quarter, Wing Staff, 502d Air Base Wing, JBSA-Ft. Sam Houston, TX
2016  Senior NCO of the Quarter, 1st Quarter, Wing Staff, 502d Air Base Wing, JBSA-Ft. Sam Houston, TX
2017  Senior NCO of the Quarter, 2nd Quarter, 502d Mission Support Group, JBSA-Randolph AFB, TX
2018  Billy Boles Mentorship Award, Annual, Air Education and Training Command, JBSA-Randolph AFB, TX
2019  Senior NCO of the Quarter, 3rd Quarter, Headquarters Staff, US Air Force Warfare Center, Nellis AFB, NV
2019  Air Force Safety Special Achievement Award, US Air Force Warfare Center, Nellis AFB, NV
2020  Senior NCO of the Quarter, 2nd Quarter, Headquarters Staff, US Air Force Warfare Center, Nellis AFB, NV
2020  Senior NCO of the Year, Annual, Headquarters Staff, US Air Force Warfare Center, Nellis AFB, NV

A close review of the Enlisted Performance Reports throughout the career of SMSgt Elliott Velez reveals how this man rapidly progressed through the enlisted ranks of the Air Force. He was repeated recognized as being in all respects an outstanding Airman and was routinely commended for his outstanding work ethic and leadership skills.  In the rank of Airman First Class (A1C), in his Enlisted Performance Report (EPR) dated September 7, 2004, Senior Master Sargent Velez was rated as *"Outstanding dedication towards self-improvement; Excellence in all he does; Stellar performer; Superior and absolute professional."* Again in the rank of A1C, in his EPR dated April 18, 2005, Senior Master Sargent Velez was rated as *"Superb work ethic/dedication; Stellar Airman who set the example for others; Top-notch performer; A take-charge individual; energetic self-starter and high-achiever with winning spirit."* As a Senior Airman (SrA), in his EPR dated May 10, 2006 Senior Master Sargent Velez was rated as

*"Brilliant, innovative and dedicated Airman; Innovative leader among peers."* Again as a SrA, in his EPR dated May 11, 2007, Senior Master Sargent Velez was rated as *"Vigilant coordination; Proactive; Dedicated SSgt-select; Shows extreme initiative! Innovative."* In his EPR dated May 11, 2009, as a Staff Sargent (SSgt), Senior Master Sargent Velez was rated as being *"Dedicated to excellence; Dynamic NCO."* In his EPR dated May 12, 2010, again as a SSgt, he was referenced as being a *"Local Hero: provided first aid/stabilized autistic child after accident; hailed by first responders."* His EPR dated February 1, 2011, again as a SSgt, referenced the fact that Senior Master Sargent Velez *"Led drive for St. Mary's Food Bank; contributed 300 lbs of food; enhanced quality of life for underprivileged; Volunteered 6 hrs for Special Olympics."* In his EPR dated February 29, 2012, as a Technical Sargent (TSgt), Senior Master Sargent Velez is referenced as a *"Peerless instructor; Highly active Focus 56 member."* referenced the fact that Senior Master Sargent Velez *"*Led drive for St. Mary's Food Bank; In his EPR dated October 20, 2013, as a TSgt he was characterized as being *"A premier NCO who excelled in job performance, leadership and community service."* In his EPR dated February 7, 2013, he was noted as being his rater's *"#1 NCO, a Strong leader, effective manager, professional and involved."* In his EPR dated April 6, 2015 as a Master Sargeant (MSgt) he was characterized as being a *"Bold leader. Excelled at every opportunity."* As a MSgt, his EPR dated December 5, 2017 referenced him as being the *"# 1 of 81 MSgts!"* His EPR dated September 12, 2018, again as a MSgt, characterized him as an *"Outstanding leader with AF wide impact on junior enlisted, peers and CGO's"* (Company Grade Officers).  In his EPR dated September 25, 2019, as a Senior Master Sargeant (SMSgt), he was characterized as a *"Trusted leader w/ AF-wide impact on junior enlisted, peers and CGO's."* On August 16, 2021 his EPR as a SMSgt referenced him as being a *"Multifaceted SNCO! AF-wide impact/leadership."* It is also

noted that in July of 2021, SMSgt Velez was among citizens placed himself in jeopardy when he helped pull a drowning man out of a river in Texas.[14]

Elliott Velez is before this Honorable Court not only with an outstanding military career spanning just short of twenty years, including two combat tours in Iraq, but also with a support system comprised of his family and close friends and associates as referenced in the numerous character letters submitted to the Court. It is well recognized in consideration of the sentencing factors under 18 U.S.C. §3553 that family ties "are pertinent to crafting an appropriate sentence." *United States v. Nellum,* No. 2:04-CR-30, 2005 BL 88941, (N.D. Ind. Feb. 3, 2005). Elliott shares a close relationship with his wife, children, mother, stepfather and brothers. *See, United States v. Myers,* 353 F. Supp. 2d 1026, 1031 (S.D. Iowa 2005) (imposing non-guidelines sentence where defendant had "been a steadfast and guiding presence his family's life"). Elliott's absence while incarcerated will have a profound impact on his family. *See also, United States v. Schroeder,* 536 F.3d 746 (7th Cir. 2008) (remanding for resentencing where the sentencing court did not address defendant's claim of extraordinary family circumstances: "[w]hen a defendant presents an argument for a lower sentence based on extraordinary family circumstances, the relevant inquiry is the effect of the defendant's absence on his family members*"*). Elliott's family members are literally devasted by his impending lengthy incarceration, but all have been deeply entrenched in their efforts to provide him support while he is incarcerated. As noted, Elliott had been approved for retirement from the Air Force in February of 2023 after 20 years of active duty. He and his family were looking forward to his transition into the civilian employment in the field of real estate, where he would be able to spend more time with his family. Elliott and his wife Joanne, who is a registered nurse, were also looking forward to having a child of their own. As apparent from his character letters submitted

---

[14] Newspaper Article of July 6, 2021

for consideration, he has a strong, positive relationships with his family, friends and the community at large. His family support as well as support from others who have provided sentencing letters on his behalf is unwavering and will continue in full force to assist him as necessary during his confinement as well as upon his eventual release from confinement. It is noted that if sentenced to a term of imprisonment for more than recommended by the Defense, upon release from confinement, his mother and father would be quite elderly. The steadfast and guiding presence of his family is a proper consideration in imposing a below Guideline sentence. *See United States v. Myers*, 353 F, Supp. 2d. 1026, 1031 (S.D. Iowa 2005). *See also Benkahla,* 501 F. Supp. 2d. at 760, E.D. Va (2007) (awarding downward variance based on, among other things, defendant's "strong, positive relationships with friends, family and the community."); *United States v. Harding*, No. 05 CR 1285-02, 2006 WL 2850261, (S.D.N.Y. Sept. 28, 2006) (awarding a below Guidelines sentencing taking "note of the significant network" ready to support the defendant.)

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

The nature and circumstances of the offense conduct of the defendant is one of the factors to be taken into account under the provisions of 18 U.S.C. §3553(a) when determining a sentence that is sufficient, but not great than necessary to satisfy the statutory factors. As noted previously, pursuant to the terms of the Plea Agreement and in accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States fully considered the nature and circumstances of the offense conduct by the defendant, as well as the other sentencing factors, and recommends imposition of a sentence of no more than 35 years (420 months), as being "sufficient, but not greater than necessary" to satisfy the statutory factors. Before agreeing to the provision in the Plea Agreement pertaining to the United States's recommendation for an appropriate sentence that was sufficient, but not greater than necessary, counsel for the United States expended an extensive

amount of time and effort in working with the investigators and fully evaluating the nature and circumstances of the offenses by the defendant.  Counsel for the defendant fully acknowledges the seriousness of the offenses, as does the defendant, and he has acknowledged his guilt by clearly accepting full responsibility.[15] Furthermore, the United States has filed a Motion to Grant Additional One-Level Reduction in the Offense Level for Acceptance of Responsibility[16] by reason of the fact that he has assisted authorities in the prosecution of his own misconduct by timely notifying authorities of the intention to enter pleas of guilty.[17]  Most significant is the fact that the defendant's guilty pleas avoided the necessity for the young victims and/or their parents from testifying at trial or otherwise enduring the emotional impact of a contested jury trial.

In the October 2021 report of the United States Sentencing Commission, Federal Sentencing of Child Pornography Production Offenses, the Sentencing Commission discussed the issue of proximity of the offender to his victims when evaluating the offender's offense conduct and the degree of harm to the victim.   The Commission recognized that the offender's offense conduct and the degree of harm to the victim varies based on the offender's physical proximity and personal relationship with the victim.  Of the 512 child pornography production offenders sentenced in fiscal year 2019, 60.3 percent were related to or otherwise maintained a position of trust over the minor victim, whether through familial relationships or by virtue of the offender's role as a teach or coach.

The report noted that of the 512 offenders sentenced in fiscal year 2019, 60 percent (311 offenders) produced the child pornography in the same location of the victim.  Furthermore, the

---

[15]   USSG § 3E1.1(a)
[16]   ECF Document #45
[17]   USSG § 3E1.1(b)

Commission found that the majority of the offenses involved the offender sexually contacting the victim.[18] While the proximity of the offender to the minor victim is a central factor related to child pornography production cases, it is noted that the defendant was neither related to nor maintained a position of trust over the victims, and his offense conduct occurred remotely through the internet and use of mobile technology. The defendant did not travel to meet the victims and there was no physical contact between the defendant and any of the victims being involved.

## NEED FOR SENTENCE TO REFLECT SERIOUSNESS OF THE OFFFENSE; NEED FOR SENTENCE TO PROMOTE RESPECT FOR THE LAW; NEED FOR SENTENCE TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE

A conviction for Production of Child Pornography in violation of 18 U.S.C. § 2251(a) subjects the offender to mandatory 15 years imprisonment, with a maximum of 30 years imprisonment, at least 5 years of supervised release, mandatory restitution and a maximum fine in the amount of $250,000. Clearly imposition of the mandatory minimum punishment of imprisonment for 15 years (180 months) will, in and of itself, reflect the seriousness of the offense, promote respect for the law and provide a just punishment for the offense.

## NEED FOR SENTENCE TO AFFORD ADEQUATE DETERANCE TO CRIMINAL CONDUCT

The issue of specific deterrence is a sentencing factor for consideration under 18 U.S.C. § 3553 (a)(2)(C). The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew

---

[18] Federal Sentencing of Child Pornography Production Offenses, United States Sentencing Commission, October 2021

von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects…Three National Academy of Science panels reached that conclusion, as has every major survey of the evidence."); David Weisburd *et al*., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year timeframe").

The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level…While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004).   According to "the best available evidence…prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

General deterrence is implicit in the fact that a conviction for Production of Child Pornography in violation of 18 U.S.C. § 2251(a) subjects the offender to 15 years to 30 years imprisonment, at least 5 years of supervised release, mandatory restitution and up to a $ 250,000 fine.

## NEED FOR SENTENCE TO PROVIDE DEFENDANT WITH NEEDED EDUCATION OR VOCATIONAL TRAINING, MEDICAL CARE AND OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER

As previously addressed, Elliott Velez served two combat tours to Iraq in 2007 and 2008 where he was continuously subjected to significant risk of death injury as well to the other horrors of war.  Although he believes he suffers from Post Traumatic Stress Disorder (PTSD) as a result of his combat service in Iraq, he has not been properly evaluated and assessed for PTSD.[19]  Furthermore, earlier in his Air Force career he sought out mental health treatment due to his relationship issues with the mother of his children.  Despite not specifically seeking mental health treatment to address his combat related issues, in January 2022 he was diagnosed with depression and anxiety, for which he is currently prescribed Trazadone and Prozac.[20]  He also acknowledges that he has an addictive personality not only to alcohol, but also to pornography and gambling. [21]  He was unable to initiate mental health treatment due to his arrest and incarceration on the subject charges.

While incarcerated and under the control of the Federal Bureau of Prisons, Elliott will be afforded the necessary mental health evaluations, care and treatment, to include evaluation for PTSD.  He will be able to participate in a formal Sex Offender Treatment Program, as well as

---

[19] Presentence Investigation Report § 110
[20] Presentence Investigation Report § 109
[21]Presentence Investigation Report § 110

substance abuse programs and treated to address his noted addictions to pornography and gambling.  Upon release from prison, Supervised Release and the specific conditions of his release will ensure he continues to receive the necessary counseling and therapy.  Although he is highly educated, Elliott will also benefit from vocational training that is available.

### THE SENTENCING RANGE ESTABLISHED FOR THE TYPE OF OFFENSES COMMITTED BY THE DEFENDANT AS SET FORTH IN THE UNITED STATES SETENCING GUIDELINES

As referenced in the Presentence Investigation Report, in calculating the Total Offense Level, Chapter 5, Part A (comment n.2) states that in those rare instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43.[22] However, a Total Offense Level of 43 equates to a guideline of Life, which is beyond the statutory maximum punishment for a violation of 18 U.S.C. § 2251(a) which is thirty years imprisonment.  Paragraph 127 of the Presentence Investigation Report references that with a Criminal History Category of 1, the Guidelines Provisions reflects Custody:  2,160 months (* restricted).   The Guideline Provision of custody for 2,160 months equates to the statutory maximum punishment for each of the 6 count (30 years) added together.   As addressed previously, pursuant to the terms of the Plea Agreement and in accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States has agreed to recommend a variance of  imposition of a sentence no more than 35 years (420 months), as being "sufficient, but not greater than necessary" to satisfy the statutory factors.   While counsel for the United States was certainly aware of the fact that Elliott Velez was on active duty with the Air Force at the time of agreeing to recommend a sentence no more than 35 years, counsel were certainly not aware of the

---

[22] Presentence Investigation Report § 87

full scope and magnitude of his nearly 20 year military career, including two combat deployments in Iraq.  The Defense respectfully submits that upon consideration of the mitigating factors related to the history and characteristic of Elliott Velez, a sentence of imprisonment for 15 years (180 months), followed by supervised release for life, is "sufficient, but not greater than necessary" to satisfy the statutory factors.

## NEED TO PROVIDE RESTITUTION TO VICTIMS OF THE OFFENSE

Pursuant to the Mandatory Restitution for Sexual Exploitation of Children Act (18 U.S.C. § 2259), the defendant is obligated to pay full restitution to the victims.  The defendant understands that pursuant to 18 U.S.C. § 2259(b)(2)(B), the Court must order restitution to each victim in an amount not less than $3,000.00.

## ABILITY TO PAY SPECIAL ASSESSMENTS AND FINE

As to special assessments, the Court must consider imposition of special assessments pursuant to 18 U.S.C. §3014 and §2259A.  In determining whether a defendant is indigent, courts "consider, among other things, the income, financial resources, and earning capacity of the defendant, as well as the burden that the [financial penalty] will impose upon the defendant and his dependents." *United States v. Lail*, 736 Fed. App'x 381, 382 (4th Cir. 2018) (per curiam) (quoting *United States v. Aramony*, 166 F.3d 655, 665 (4th Cir. 1999)); *see also United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017) ("[I]n the context of § 3014 indigency determinations, an analysis of both a defendant's current financial situation and his ability to pay in the future is appropriate in determining his 'non-indigent' status."). The factors under 18 U.S.C. §3572, considered in determining the amount of assessments, include among other things, the defendant's income, earning capacity, and financial resources, the burden that the fine will impose upon the defendant and any dependent, whether restitution is ordered or made and the

amount of such restitution, and the expected costs to the government of any imprisonment or term of supervised release.   As reflected in the Presentence Investigation Report, Mr. Velez has a negative net worth and no liquid assets.[23]   Counsel further respectfully requests the Court consider the defendant's future earning ability, and his ability to pay in the future.  His conviction in this matter, together with the sex offender registration will effectively eliminate many employment opportunities after release from incarceration.  Upon his release from prison, he will have to take a giant step into a new career path – one undoubtedly lower-paying than any which would have been available to him prior to his conviction. The Defense according respectfully request the Court to find that Mr. Velez is indigent for purposes of ability to pay applicable fines and/or special assessments.

## THE SENTENCING COMMISSION AND CHILD PORNOGRAPHY GUIDELINES

In determining an appropriate sentence that is sufficient but not greater than necessary, the Court must "consider all of the 18 U.S.C § 3553(a) factors," "make an individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing.  *Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011).  The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id.* at 101; *Pepper*, 131 S. Ct. at 1242-43.  An inherent aspect of the applicable law is the authority of this Court to disagree with a Guideline as a matter of policy.  Because "the Guidelines are now advisory…as a general matter, courts may vary based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. 85 at 101-02 (2007).

---

[23]  Presentence Investigation Report § 114-118.

The Sentencing Commission addressed sentencing outcomes on child pornography production offenders.   Recognizing that the potential for physical harm to a child is greater when the offender is present in the same location as the victim, the Commission noted that in fiscal year 2019, courts sentenced offenders who were present with the minor victim during production offenses to longer sentences than offenders that committed the production remotely. Child pornography production offenders who were in the same location as the victim were sentenced to an average of 302 months, compared to an average of 234 months for remote offenders, a difference of more than five years.[24]

## ARGUMENT IN SUPPORT OF VARIANCE

Counsel for the defendant Elliott Dale Velez respectfully submits that a period of imprisonment for one-hundred-eighty (180) months, followed by supervised release for life would be "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2).

Fashioning a just sentence cannot be reduced to a mere arithmetical exercise. Reliance solely on numbers, quantities, offense levels, criminal history categories and matrixes produces an illusory precision that obscures the fact that sentencing, in the end, must involve the exercise of judgement, i.e. a judge's discerning opinion that results from identifying and weighing fairly all of the factors relevant to achieving the statutory sentencing goals.  See *United States v. Biheiri*, 356 F. Supp. 2d 589 (E.D.Va 2005).

---

[24]  Federal Sentencing of Child Pornography Production Offenses, United States Sentencing Commission, October 2021

As addressed previously, the exceptional nearly 20-year military service of Elliott Velez, which includes two tours of combat duty in Iraq, is a significant mitigating factor recognized by the United States Supreme Court, as well as the United States Sentencing Commission and Sentencing Guidelines.  The Supreme Court has observed that the nation has "a long tradition of according leniency to veterans in recognition of their service, especially for those who fought on the front lines."[25]  United States Circuit Judge Michael Daly Hawkins has written "There is widespread public acceptance of the notion that military veterans should be treated differently in many respects from their civilian counterparts. This acceptance may be attributable to a general respect for the sacrifice of members of an all-volunteer force and the knowledge that today's veteran may have been subjected, even repeatedly subjected, to life threatening events the general public may never know."[26]

As referenced previously, the United States Sentencing Guidelines specifically authorize judges to consider an offender's prior military service as a mitigating factor when determining whether to depart from the federal sentencing guidelines.  In its Federal Sentencing Guidelines Manual, 2021 Edition, the Commission states "Military service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines."[27]

The Defense submits that the history and characteristics of Elliott Velez, including not only his exceptional military service as well as the extensive and committed support of his

---

[25] Porter v McCollum, 558 U.S. 30, 43-44 (2009) (per curiam).
[26] Michael Daly Hawkins, Coming Home: Accommodating the Special Needs of Military Veterans to the Criminal Justice System, 7 OHIO STATE J. CRIM L. 563, 569 (2010).
[27] Federal Sentencing Guidelines §5H1.11

family and friends, his other contributions to society as referenced in this submission, as well as

the sentencing factors set forth at 18 U.S.C. § 3553(a)(2) supports the variance requested by the

Defense.  In that recommendation, the Defense recommends imposition of supervised release for

life to commence upon completion of the term of imprisonment.  Supervised release for life, with

imposition of standard and special conditions for release as well as mandatory participation in

sexual offender and substance abuse treatment programs, mandatory sex offender registration and

intense familial support will ensure his strict compliance with the law.   Unlike civilian offenders

who engage in similar conduct, Senior Master Seargeant Elliott Velez and his family face the

collateral consequence of his adverse separation from the Air Force with resultant estimate loss

of his total retirement package for Elliott and his family is $ 3,051,935.00, with  a present value

of $ 1,187,410. [28]  Courts have recognized the implication as to the serious collateral

consequences inherent with a conviction of this nature and have varied downward on this basis.

*See e.g. U.S. v Pauley*, 511 F.3d 468,474-75 (4th Cir. 2007).  As a federal felon and registered sex

offender, Mr. Velez will be dealing with the consequences of his conduct for the rest of his life.

## <u>CONCLUSION</u>

As referenced by the personal statement of Eliott Velez, he fully accepts responsibility for

his offenses.  He is deeply remorseful both to the children involved, as well as to their families.

Recognizing the seriousness of this case, but also considering the mitigating factors surrounding the

history and characteristics of Mr. Velez, the Defense respectfully requests this Honorable Court to

impose a variant sentence, to consist of imprisonment for 15 years (180 months), followed by

---

[28]  See Exhibit F: Estimated loss of Total Retirement Package, at age 85 life expectancy in the amount of
$3,051,935.00

supervised release for life, is "sufficient, but not greater than necessary" to satisfy the statutory factors.

Attached to this position paper are documents that Elliot Velez respectfully requests be reviewed by the Honorable Court prior to the sentencing hearing, as follows:

**A.  Biography of Senior Master Sergeant Elliott D. Velez**

**B.  List of Military Awards and Decorations**

**C.  Air Force Enlisted Performance Evaluations (EPR)**

**D.  Military Plaques**

**E.  Retirement Application**

**F.  Military Retirement Chart**

**G.  Newspaper Articles**

**H.  Southern Correctional Ministry Certificate**

**I.  Crossroads Certificate of Achievement**

**J.  Character Letters**
   1. **Sarah Marie Lopez, CMSgt, USAF**
   2. **Robert Talbot**
   3. **Mark Washington, SMSgt, USAF (Ret)**
   4. **Vanessa Blake-Brown**
   5. **Teril Dean Baskett, Jr., CMSgt, USAF, (Ret)**
   6. **Tyndall M. Nelson, Captain, USAF**
   7. **Corey Lusk**
   8. **Freddie Giddens, SMSgt, USAF (Ret)**
   9. **Jamie Eisenbeck, CMSgt, USAF (Ret)**
   10. **Jason Beacoat, SMSgt, USAF**
   11. **Alfredo Benavides, SMSgt, USAF (Ret)**
   12. **Rosalind Taylor**
   13. **Johnathan Vanbronckhorst**
   14. **Anthony Gonzales**
   15. **Johnny Gonzales**
   16. **Cortney Velez**

17. **Esperanza Gonzales**
18. **Liam Dwaine Velez**
19. **Robert Velez, Jr., MSgt, USAF**
20. **Robert L. Velez, Sr., SMSgt, USAF (Ret)**
21. **Maliyah Velez**
22. **Tayleigh Velez**
23. **Angelica Martinez**
24. **Maxine Velez**
25. **Joanne Gonzales-Velez**

**K.  Personal and Military Photographs**

**L.  Personal Statement from the Defendant, Elliott Dale Velez**

**ELLIOTT DALE VELEZ**

By _____/s/_____
        Of Counsel


_____/s/_____
Greg D. McCormack, Esq.
Virginia State Bar No. 20112
Attorney for Elliott Dale Velez
McCormack & McCormack
Attorneys at Law
484 Viking Drive, Suite 190
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
gdm@mccormackpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of March, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Devon Heath, Esquire
Assistant U.S. Attorney
U.S. Attorney's Office
721 Lakefront Commons
Suite 300
Newport News, Virginia 23606

27

Phone: 757-591-4000
Email: devon.heath@usdoj.gov

_____/s/_____
Greg D. McCormack, Esq.
Virginia State Bar No. 20112
Attorney for Elliott Dale Velez
McCormack & McCormack
Attorneys at Law
484 Viking Drive, Suite 190
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
gdm@mccormackpc.com


    I further certify that on this 15th day of March, 2023, I caused a true and correct copy of the foregoing Position of the Defendant with Respect to Sentencing Factors to be e-mailed to the following:

Shannon E. Gerard
United States Probation Officer
600 Granby Street
Suite 200
Norfolk, Virginia 23510
Phone: 757-222-7311


_____/s/_____
Greg D. McCormack, Esq.
Virginia State Bar No. 20112
Attorney for Elliott Dale Velez
McCormack & McCormack
Attorneys at Law
484 Viking Drive, Suite 190
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
gdm@mccormackpc.com